HORACE N. NOYES *vs.* ETHEL L. NOYES.

Essex.   November 8, 1906. — January 4, 1907.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Marriage and Divorce*, Connivance.

If a husband, for the purpose of affording his wife an opportunity to commit adultery with a certain person and desiring that she shall do so in order that he may obtain a divorce, arranges with the owner of a house that it may be used by his wife on a certain evening without interference or interruption, and the wife knowing nothing of the arrangement commits the anticipated adultery there on that evening, these facts constitute connivance on the part of the husband, and he cannot maintain a libel for divorce by reason of the adultery.

LIBEL, filed November 16, 1904, for divorce on the ground of adultery alleged to have been committed with one Dodge.

The answer contained a general denial, and alleged condonation and connivance.

In the Superior Court the case was heard by *Gaskill*, J. The judge, without hearing the libellee or any of her witnesses, found that adultery, if committed before November 5, had been condoned, and that the libellant arranged "as stated in his testimony as hereinbefore recited" with one Dow that an opportunity should be afforded the libellee by permitting her and the corespondent to pass the evening of November 5 alone in Dow's house without interference and without interruption by other persons, although such permission theretofore, on the morning of November 4, had been refused the libellee by Mrs. Dow, and ruled as matter of law that the facts so found were connivance on the part of the libellant. There was no evidence that the libellee had any knowledge of the arrangements between the libellant and the detectives and the libellant and either Mr. or Mrs. Dow.

By agreement of the parties the following statement was allowed by the judge to be added to the bill of exceptions :

" The libellant introduced testimony tending to show that on said evening of November 5th, the libellee and the co-respondent went to Dow's house shortly after dark unlocked the door entered the house down stairs and remained there until nine o'clock that evening; that shortly before they entered the house three men in the employ of the libellant also went to this house, found the door locked and no one there, unlocked the door, went inside and upstairs and remained there until shortly after nine o'clock when they came down stairs and found the libellee and the co-respondent in a situation which, if their testimony is to be believed, would warrant a finding that adultery had been committed.

" There was evidence that no person other than the libellee, the co-respondent and these men was in the house during the evening."

The judge ordered that the libel be dismissed.   To this order and to the ruling stated above the libellant alleged exceptions.

*E. B. Fuller*, for the libellant.

*H. F. Hurlburt, Jr.*, for the libellee.

HAMMOND, J.   The trial judge found that the libellant arranged, as stated in his testimony which is recited in the bill of exceptions, with one Dow that an opportunity should be afforded the libellee by permitting her and the co-respondent to pass the evening of November 5 alone in Dow's house, without interference and interruption by other persons, although such permission had theretofore on the morning of the preceding day been refused the libellee by Mrs. Dow, and having so found, " ruled as matter of law that the facts so found were connivance on the part of the libellant."   He thereupon ordered that the libel be dismissed, " and to the rulings aforesaid and said order the libellant duly excepted."   In an amendment to the bill it is stated that the finding was made only upon the evidence recited in the bill.

It is contended by the libellant that the only question arising on the record is whether the testimony of the libellant, which is the only testimony reported, shows as matter of law connivance; but we do not so interpret the record.   The only ruling made

was that certain facts found by the trial court constituted in law connivance, and the question whether the evidence warranted the finding does not seem to have been raised. The evidence upon which the finding was made was circumstantial to a certain extent; and according to the relative degree of credit to be given to the libellant's denials of inferences which might be drawn against him from the facts stated by him, the finding might be either way. The judge evidently placed more reliance upon the legitimate inferences from the facts stated by the witness than he did upon the denial of the inferences. The witness was before him, and as he went on the judge had an opportunity by observing him to test his sincerity in his denials.

Even if the question whether the finding is sustained by the evidence is before us, we are of opinion that it is so sustained. The evidence warranted the finding that the libellant desired that on the night in question his wife should commit adultery, or at least that she should be placed in such a compromising position as to lead to the inference of the committal of that act; that he desired to do this so that he might get a divorce and be freed from her and his real estate be free from any claim on her part; that Mrs. Dow, who was to be away, had refused the libellee the use of the house for that evening; that the libellant knew it and feared that Dow might be at home; and that the libellant's purpose in seeing Dow was to induce him to stay away, not only that a crime, if committed, might be detected, but that it might be committed; and that in that way, by active exertion, he aided in procuring the house for an adulterous use by his wife, when otherwise she would not have had it. In other words, the evidence warranted the finding made by the judge that the libellant arranged with Dow that the house should be used by his wife without interference or interruption on the part of other persons, although such permission had been refused by Mrs. Dow. Under the circumstances of the case this must be held to be a finding that the libellant did this to facilitate the committal of adultery by his wife.

Was such an act as matter of law connivance on the part of the libellant? The law upon this subject was quite fully considered by this court in *Wilson* v. *Wilson*, 154 Mass. 194.

Morton, J. speaking for the court, uses the following language : " Merely suffering in a single case a wife whom he already suspects of having been guilty of adultery to avail herself to the full extent of an opportunity to indulge her adulterous disposition, which she has arranged without his knowledge, does not constitute connivance on the part of the husband, even though he hopes he may obtain proof which will entitle him to a divorce, and purposely refrains from warning her for that reason. He may properly watch his wife whom he suspects of adultery, in order to obtain proof of that fact. He may do it with the hope and purpose of getting a divorce if he obtains sufficient evidence. He must not, however, make opportunities for her, though he may leave her free to follow opportunities which she has herself made. He is not obliged to throw obstacles in her way, but he must not smooth her path to the adulterous bed. 2 Bish. Marriage & Divorce, (5th ed.) § 9. *Timmings* v. *Timmings*, 3 Hagg. Eccl. 76. *Stone* v. *Stone*, 1 Rob. Eccl. 99, 101. *Phillips* v. *Phillips*, 10 Jur. 829."

Applying the law to the findings of the court as interpreted by the issues on trial, it is clear that the ruling that as matter of law the facts show connivance was correct. By his arrangement with Dow the libellant assisted his wife on " her path to the adulterous bed." It is immaterial that she was unaware of this assistance. As additional cases bearing upon the law of connivance, see *Morrison* v. *Morrison*, 136 Mass. 310 ; *Robbins* v. *Robbins*, 140 Mass. 528.

*Exceptions overruled.*