CHARLES E. LEAVITT *vs.* GLADYS E. LEAVITT.

Norfolk. November 22, 1917. — January 5, 1918.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Marriage and Divorce*, Connivance. *Evidence*, Presumptions and burden of proof.

The connivance which will constitute a bar to a libel for divorce need not be express connivance. It may be established by evidence which shows either active or passive consent on the part of the libellant to adulterous acts of the libellee.

A judge who heard a libel for divorce brought by a husband and charging adultery found, on evidence warranting the finding, that the libellant entertained the co-respondent at his home one evening and night and, knowing that the alleged co-respondent had purchased and had a pint of whiskey, left him with his wife while he spent the evening elsewhere; that, returning, he from outside his house saw the pair in familiar attitudes and, through a window, heard them agree to a clandestine meeting in a neighboring city the following day when there would be an opportunity for an adulterous act; that the libellant then entered the house, saw evidences of the use of the whiskey by both of the pair, treated them pleasantly and slept that night with the alleged co-respondent; that the next morning the libellee asked him for money for a dress, that he told her he had not enough for that, that she asked him for $5 for a skirt which he gave her; that she left for the city by an early train; that he told the alleged co-respondent that he should spend the day in the neighborhood; that the co-respondent left him and thereupon the libellant went to the city and, by use of detectives, caught the libellee and the alleged co-respondent together under circumstances which would warrant a finding of adultery. From such finding the judge drew the inference that the libellant, deliberately throwing the libellee off her guard, gave her money intending to aid her in carrying out her purpose in going on her adulterous enterprise, and ruled as a matter of law that the libellant was guilty of connivance and dismissed the libel. *Held*, that the judge's inference of fact and ruling of law were warranted.

LIBEL FOR DIVORCE, filed on October 23, 1916, and afterwards amended, charging adultery.

The libel was heard by *Callahan*, J. On the libellant's direct testimony alone the judge found the following facts: "I find that the libellant, a ship's draftsman, employed at the Brooklyn Navy Yard, invited the alleged co-respondent, a friend and fellow draftsman employed at the same yard, to accompany him on a visit to the libellant's family at Weymouth; that they left Brooklyn on the night of October 18, 1916, and arrived in Boston early the

following morning; that the alleged co-respondent with the knowledge of the libellant, purchased a pint of whiskey; that they arrived at the libellant's home in Weymouth about half past one o'clock in the afternoon and that the libellant introduced the alleged co-respondent to his wife, they never having met before; that, during the afternoon, the libellant and the alleged co-respondent worked on the assembling of a dismantled motor cycle, and that while they were so engaged the libellee frequently entered the room and conversed with them; that after all the parties had had supper together the libellant said that he desired to attend a lodge meeting in order to meet his acquaintances, and asked the alleged co-respondent if he was willing to remain at the house a couple of hours or so, and that the alleged co-respondent said he was very willing; that he left his home about a quarter before eight o'clock in the evening and returned about a quarter before eleven o'clock; that, as he turned up the path leading to his home, he saw through a crack in the curtain the alleged co-respondent sitting on a rocking chair and the libellee standing near him with one hand resting on his shoulder and the other smoothing his hair; that in order to hear their conversation he walked to another window and heard his wife say that she wanted a new dress, that she would meet the alleged co-respondent at track 26 in the South Station in Boston at half past twelve o'clock the following day; that he heard the alleged co-respondent say that he did not have much money with him, but he guessed he might have enough for a good time; that the libellee replied that she guessed he was 'all to the good in other respects;' that she talked of his beautiful hair and said they would better be careful as the libellant might return home any minute; that thereupon the libellant entered the house and saw a pint whiskey bottle and two glasses standing on the table between them; that three quarters of the contents of the bottle had been consumed; that the alleged co-respondent showed the effects of the liquor, but that his wife showed no such effects, although liquor could be smelled upon her breath; that he engaged in pleasant conversation with them for fifteen minutes and made no reference to what he had heard or seen; that he slept with the alleged co-respondent that night, both occupying the same bed; that the next morning the libellee told him that she was going to Boston

and asked for $15 with which to purchase a dress; that he told her that he could not afford to give her the sum mentioned, but did give her $5 for the purchase of a skirt; that, subsequently, at Boston she did purchase a skirt for $2.98; that she left for Boston on an early train, leaving the libellant and the alleged co-respondent at the house; that the alleged co-respondent told the libellant that he was going over to the Fore River shipyard, and that he expected to be in Boston in time to meet a cousin at half past twelve o'clock; that the libellant informed him that he would spend the day locking up, or otherwise attending to, certain summer cottages at Weymouth; that immediately after the alleged co-respondent's departure the libellant hastened to Boston and engaged private detectives for the purpose of detecting the libellee and the alleged co-respondent in the act of committing the crime planned the night before; that the libellant and the detectives saw the libellee and the alleged co-respondent meet at the South Station and followed them to a hotel where after repeated knockings, they were admitted to a room occupied by the alleged co-respondent and the libellee and found them in such circumstances as would justify me in finding, if the libellant's testimony remained uncontradicted, that an act of adultery had been committed.

"I further find that the libellant, after hearing the libellee and the alleged co-respondent make their lustful plans and, after seeing evidences of excessive drinking on the part of his friend and guest in the company with his wife, slept with the alleged co-respondent for the purpose of freeing the minds of the guilty couple of any fear of suspicion on the part of the libellant.

"I further find that in giving her money for the purchase of the skirt he intended to aid her in carrying out her purpose to go to Boston upon her adulterous enterprise.

"I further find that when he informed the alleged co-respondent that he intended to remain at Weymouth he made a false statement of his intention for the purpose of inducing the alleged co-respondent and the libellee to believe that they were free from any danger of encountering the libellant in Boston."

At the conclusion of the libellant's direct testimony and without any other evidence, the judge ruled as a matter of law upon the facts found by him from the libellant's testimony, the inferences therefrom and the appearance of the libellant that such facts

constituted connivance and ordered that the libel be dismissed. The libellant alleged exceptions.

*W. W. Kennard,* (*W. J. Drew* with him,) for the libellant.

*T. F. McAnarney,* for the libellee.

BRALEY, J.   The exceptions state, that the "court made no finding upon the charges of adultery, it being understood that the only issue passed on was that of connivance," and having found that connivance had been proved the presiding judge ordered the libel dismissed.   The evidence is reported; but we cannot reverse his findings of fact.   *Morrison* v. *Morrison,* 136 Mass. 310. The question accordingly is whether the evidence warranted the finding.

It is not contended that express connivance had been shown; but this is not necessary.   It may be established by conduct which not only causes the adulterous act, but shows consent thereto actively or passively of the libellant.   *Robbins* v. *Robbins,* 140 Mass. 528, 531.   The right to a divorce is barred because, the marital wrong complained of having been consented to, no injury has been suffered.   *Pierce* v. *Pierce,* 3 Pick. 299.   *Wilson* v. *Wilson,* 154 Mass. 194.   *Noyes* v. *Noyes,* 194 Mass. 20.   *Ross* v. *Ross,* L. R. 1 P. & D. 734.

The only evidence introduced was that of the libellant.   It unquestionably shows undue and censurable familiarity between the libellee and the co-respondent at the matrimonial home, with an arrangement between them for a meeting the next day in a neighboring city, where an opportunity would be afforded for the act charged in the libel.   But, even if as further appears the libellant was fully informed as to his wife's adulterous disposition, and did not remonstrate or warn her of her peril and of the consequences which might follow, because he hoped she might go far enough to enable him to obtain a divorce, his conduct did not amount to connivance.   *Wilson* v. *Wilson,* 154 Mass. 194.   The libellant however also testified, that on the morning of the day of the appointment, the libellee said that she was going to the city and asked for money with which to purchase a dress.   But, being unable to advance the amount required, he gave her a less sum to buy a skirt.   The journey was made, and, although a skirt was purchased at a price leaving an appreciable balance of the money given to her, the evidence, if believed, showed the act

charged in the libel to have been committed. The real, not the ostensible purpose of the libellant in advancing the money was a question of fact, and the judge under the circumstances was justified in finding, "that in giving her money for the purchase of the skirt he intended to aid her in carrying out her purpose to go . . . upon her adulterous enterprise."

The intent and willingness of mind of the libellant to have his wife transgress having been found, the ruling that as matter of law the libel could not be maintained was correct. *Cairns* v. *Cairns,* 109 Mass. 408. *Morrison* v. *Morrison,* 136 Mass. 310.

*Exceptions overruled.*