MARIBELL E. COAN *vs.* GEORGE H. COAN.

Essex.  May 23, 1928. — June 29, 1928.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Marriage and Divorce*, Condonation. *Evidence*, Presumptions and burden of proof. *Probate Court*, Finding by judge.

At the hearing of a libel by a wife against her husband for a divorce on the ground of desertion, it appeared that the libellee, knowing that the libellant had gone away with another man with whom she cohabited for about two weeks, occupied the same bed with her upon the night of her return to him and upon the following three nights, after which he left her, taking their children, and did not return. There was conflicting evidence as to whether the parties during those four nights had sexual relations and whether the libellee forgave the libellant her escapade. The judge found that the libellant had not sustained her contention that the libellee "cohabited with her in the full sense of the word" nor her contention that he condoned her conduct; and found that the libellee left the libellant for justifiable cause. A decree was entered dismissing the libel. *Held*, that

(1) The presumption of sexual intercourse arising from the circumstances was one of fact which might be rebutted;

(2) The burden was on the libellant to show that the libellee, with knowledge of her conduct, forgave it;

(3) The findings by the judge were not clearly wrong and the decree must be affirmed.

LIBEL, filed in the Probate Court for the county of Essex on April 14, 1927, for a divorce on the ground of desertion.

A decree *nisi* was granted, but upon a petition by the libellee, such decree was revoked. The libel thereupon was heard by *White*, J., a stenographer having been appointed under G. L. c. 215, § 18, to take the evidence; and was dismissed. The libellant appealed. Material facts found by the judge under G. L. c. 215, § 11, and rulings requested by the libellant and denied, are set forth in the opinion.

The case was submitted on briefs.

*J. J. Foley & J. H. Sisk, Jr.,* for the libellant.

*J. W. Sullivan & J. F. Doyle,* for the libellee.

PIERCE, J. This was a libel for divorce, which alleged that the libellee utterly deserted the libellant on or about April 9, 1924, and continued his desertion for more than three consecutive years next prior to the filing of the libel. The libellee filed an answer denying "that the libellant has been always faithful to her marriage vows," and alleging that the libellant deserted him on or about the twenty-second day of March, 1924, without cause or excuse; that on or about the ninth day of April, 1924, there was a separation between the parties under such circumstances as in law was no desertion on the part of the libellee. A stenographer was appointed to take the evidence. The case was tried on October 19, 1927. At the conclusion of testimony counsel for the libellant presented the following requests for rulings: (1) "That upon the evidence and upon the weight of the evidence the libellant is entitled to a decree"; (2) "That upon all the evidence, if any marital offence or offences were committed by the libellant it was condoned by the libellee before the filing of this libel"; and (3) "That if the libellee condoned the marital offence or offences, if any, of the libellant and continued to live with her after such condonation, his desertion was unjustified." The first and second requests were denied. No ruling was made on the third request. A decree was entered dismissing the libel on November 1, 1927. The libellant appealed therefrom, and moved "that a report of the material facts found shall be made."

The report discloses the following undisputed facts: On Saturday, March 22, 1924, George H. Coan and Maribell Coan had been married about eight years; they had five

children, the youngest being eight months old.　Since early
in 1923 they had lived in the house of the mother and grand-
mother of Mrs. Coan.　This house was the locus of the case.
After supper on Saturday March 22, 1924, the wife left the
house as if on some errand and did not return.　It appeared
that she went away with a married man, one Oliphant, lived
and cohabited with him for the first three days and nights in
Boston, and that thereafter they lived and cohabited as man
and wife for about two weeks in Quincy.　On April 5, an
inspector of the police department of Lynn arrested Oliphant
and Mrs. Coan and took them to the office of the chief of
police of Quincy.　Because of the statement of the inspector
to the chief of police that "this woman was the mother of five
children at home," the chief of police told her if she would
return to her children he would leave the case in the inspec-
tor's hands "as to what he would do later on."　Thereupon
the inspector took her to Lynn.　On arriving home she let
herself in and was followed by the inspector.　She saw her
husband in the hallway; he looked at her and did not say
anything.　She kissed him.　He said, "How could you do it,
Kid."　She did not say anything and started to cry.　The
husband testified "she tried to put her arms around my neck
and I kind of pushed her away.　I don't think anybody
could notice it."　The inspector took Coan to another room
and told him, in substance, that his wife agreed with the
chief of police in Quincy to return and take care of the
children; Coan made no reply to this statement.　That
afternoon after the departure of the inspector Coan and his
wife went out together "shopping."　On their return the
family were at supper, and Coan and his wife joined them.
While they were out and after their return there was no open
quarrel between them but "things were not pleasant" in the
mind of Coan.　Coan and wife had but one sleeping room
and one bed.　They slept in this same bed that Saturday
night and on the three following nights.　The wife testified
"that they cohabited, to the full significance of the word."
Coan testified: "I slept in the bed with her.　She slept under
the sheet and I slept on top of it"; and said in answer to the
question, "Have any relations at all with her?　You know

what I mean instead of asking any more questions?" "No, sir, I didn't."

It was in evidence that Coan had some talk with her about what her future conduct was going to be, and that she said, referring to her trip to Quincy, that she "might do it again." In substance the wife testified, and the husband denied, that when she returned from Quincy her husband forgave her for what she had done. There was testimony in most material respects contradictory as to what was said between them, how she should conduct herself, and what she should promise to do. After going to work on Wednesday morning, Coan returned in the afternoon and said: "I have come home fully decided to take the children down to my mother's, you refuse to do the things I ask and go by the rules I lay down and I'll never be able to trust you again and I have decided to leave you." He took the children to his mother's home, where he and they have remained since. He has at no time, since, returned to live with his wife, he has not invited her to live with him, and they have not anywhere cohabited.

On January 2, 1925, Coan filed in the Probate Court a petition for the custody of all the children. Mrs. Coan appeared by counsel. A decree was entered granting the petition on March 5, 1925.

In response to the requests for rulings, the judge denied the first and second and made, among others, the following findings: "Upon all the evidence, weighing the relative credibility of the parties and of their respective witnesses, I do not find that the contention of the libellant that the libellee cohabited with her in the full sense of the word, after her return from Quincy, is sustained. I do not find that he condoned her adulterous escapade or that he expressly or impliedly forgave her. . . . It is found that the libellee left his wife for justifiable cause and on such finding her libel was dismissed."

The admitted misconduct of Mrs. Coan justified her husband in living apart from her unless the fact, that with her he occupied the same room and the same bed for three nights after he had full knowledge of her breach of marital duty, raised a presumption, that within that time sexual inter-

course took place between them, which was so strong as not to be overcome by the explicit denial of Coan and the other circumstances of the case. The presumption which arises in such circumstances is not one of law, but one of fact which may be rebutted. *Drew* v. *Drew*, 250 Mass. 41. The burden of proof was upon the wife to establish that her husband, with knowledge of her breach of marital duty, forgave the wrong to him and received her as one restored to the same position she occupied before the offence was committed. *Graham* v. *Graham*, 5 Dick. Ch. 701, 706. *Bernstein* v. *Bernstein*, [1893] P. 292, 302. This she may do by direct evidence of forgiveness, or by the circumstantial evidence of condonement which sexual intercourse between husband and wife ordinarily implies. *Drew* v. *Drew, supra.* In the case before us we cannot say that the circumstances of the husband's relation to his wife compel belief that, on any one of the three nights they occupied the same room and bed, sexual intercourse took place between them, and that therefore the finding of the judge was clearly wrong. *Meader* v. *Meader*, 252 Mass. 132.

*Decree affirmed.*