CLARA A. BURKE *vs.* VINCENT P. BURKE.

Middlesex.    November 8, 1929. — February 26, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Husband and Wife,* Separate maintenance. *Probate Court,* Appeal.

Findings of fact reported by a judge of probate upon an appeal from a decree granting a petition by a wife for separate maintenance, where the record did not include the evidence at the hearing, were in substance that, beginning about three months after the marriage and while the wife was pregnant, the husband absented himself from her to visit his parents in an adjoining city when her ill health was such that she desired and needed his assistance; that he neglected her at the time of the birth of the child; that he ordered her father and brother out of his home; that they quarrelled over the question, whether he should be permitted, without her, to take the child, at times when he was between one and a half and four months old, to his parents' home; that against her protest he did so take the child; that such an attempt "resulted in an assault upon the petitioner by the respondent gripping her by the nose, forcing her from one room to another, choking her and otherwise abusing and cruelly treating her, as result of which the petitioner suffered greatly in mind and body, and was put in fear for her safety and that of their child, the petitioner then being in ill health and again pregnant"; that thereafter the petitioner left the home of the respondent and had not lived there since. The judge found that the petitioner was living apart from her husband for justifiable cause and a decree for the petitioner was entered. The respondent appealed. *Held,* that it could not be said as a matter of law that the judge would have been wrong in finding that such of the husband's conduct as was not illegal so affected the wife's health that her conduct in leaving him was not wrongful and that she was justifiably living apart from him.

Conduct which will not justify divorce may be sufficient ground for a decree for separate maintenance.

Merely remaining with the respondent during the months of her alleged maltreatment by him in the circumstances above described did not require as a matter of law that she should be found to have condoned his misconduct: the facts reported would sustain findings that any condonation was conditional and that the conditions were not fulfilled.

The exercise of his legal rights by the husband, in the circumstances above described, might justify the wife, where her health suffered as a consequence, in withdrawal, at least for a time, from the home.

PETITION, filed in the Probate Court for the county of Middlesex on October 25, 1928, in which the petitioner

alleged "that on or about September 29th, 1928, her said husband struck and beat her and on divers other days and times treated her in a cruel and abusive manner," and that she was living apart from him for justifiable cause; and sought an order prohibiting him from imposing any restraint on her personal liberty and for separate maintenance.

In the Probate Court, the petition was heard by *Leggat,* J., who made a report of his findings of fact, substantially as follows:

"The parties were married June 29, 1927. They lived in Watertown. The respondent's parents lived in Newton. The wife became pregnant in about three months after marriage. Visits by the husband to his parents, on which the wife previously had accompanied him, continued without her and against her remonstrance as to their frequency and length, and 'were the occasion of the respondent's absence from home at times when the petitioner's ill health was such that she desired and needed his assistance' . . . 'On June 4, 1928, two days before the birth of their child, the respondent refused to accompany his wife to the office of her physician in Boston, requiring her to make the trip in a public taxi-cab unaccompanied. He testified that his school work was urgent at the time but this reason does not appear to have been given to the petitioner at the time. At the hospital, one of the respondent's sisters, a trained nurse, attended the petitioner during the first ten days after childbirth. This arrangement was said by the respondent to have been made by him as a measure of economy, but caused the petitioner feelings of embarrassment. The petitioner was discharged from the hospital about June 21st, having been there since the 6th of that month.

" 'During July, 1928, the respondent, being on vacation, frequented his parents' house often taking members of his parents' family on pleasure trips in their automobile. These incidents caused the petitioner to complain, which resulted in anger being displayed. The petitioner's health was delicate and such incidents affected her health and that of the nursing child adversely. The respondent's conduct toward the petitioner became antagonistic at times and quarrels

became frequent, the respondent behaving himself discourteously toward her in the presence of others.

" 'On July 8, 1928, the respondent had an altercation with the petitioner's brother, who called at the house to see the petitioner, and called upon the police to eject him, though the call was cancelled upon his withdrawal. This incident caused the petitioner great alarm and embarrassment. On July 30, 1928, while the petitioner was absent and without her knowledge, the respondent took their child, less than two months old, to the home of his parents, in Newton, and remained away several hours, causing the petitioner upon her return to the house much anxiety and worry for the child's welfare. On August 11, 1928 the respondent again took the child to the home of his parents, driving unaccompanied with the child on the seat beside him, and thereafter the respondent several times attempted to take the child from the house against the remonstrance of the petitioner, these instances causing her great distress of mind and resulting in impairment of health.

" 'On September 23, 1928, a Sunday, the respondent desired to take the child to his parents, when the petitioner felt unable to accompany him. Anger was displayed by the respondent. The petitioner's father called at the house during the incident, a man of advanced years and very deaf. Being told by the petitioner that her husband threatened to take the child without her approval the petitioner's father remonstrated with the respondent, who became angered and called police to eject him. The police officer as well as the father testified. No action was taken by the officer other than to advise the petitioner's father to leave, but the incident further intensified the feeling which was growing between the parties themselves and between members of the family, and constant mental disturbance tended to impair the petitioner's health.

" 'On September 29, 1928, the respondent again attempted to take the child from the house. The effort resulted in an assault upon the petitioner by the respondent gripping her by the nose, forcing her from one room to another, choking her and otherwise abusing and cruelly treating her, as result

of which the petitioner suffered greatly in mind and body, and was put in fear for her safety and that of their child, the petitioner then being in ill health and again pregnant. The petitioner thereupon left the home of the respondent and has since resided apart from him.

" 'At the close of the trial, the respondent was asked upon cross examination whether he would be willing to again have his wife return to live with him. His answer was in the negative. He was asked whether he was willing to allow his wife the use of his household furniture, then in storage, if needed by her, and he answered no. As a result of remarks made by the court and its suggestion that an effort be made toward reconciliation, the hearing then adjourned until a later day, when the respondent went upon the stand and testified that he was then willing to resume cohabitation with his wife. He did not, however, change his testimony regarding the use of his furniture, and upon all the evidence I am not satisfied that the respondent's assertion of willingness to resume cohabitation with his wife was in good faith.' "

A second child of the parties was expected in June, 1929.

The respondent asked for the following rulings:

"1. If any martial [*sic*] offense was committed before September 11, 1928, by the respondent it was condoned by the petitioner.

"2. The allegations set forth in [twenty-one] specifications . . . do not constitute cruel and abusive treatment within the purview of the G. L. c. 208, § 1.

"3. If there was evidence of the application of physical force to the body of the petitioner by the respondent not for the purpose of inflicting suffering but for the sake of self protection of the respondent it is not cruel and abusive treatment.

"4. Where the acts committed were not committed with a malevolent motive or with an intent to injure or cause suffering to the petitioner it was not cruel and abusive treatment.

"5. Where the words spoken were not spoken with a malevolent motive or with an intent to cause suffering to the petitioner it is not cruel and abusive treatment.

"6. It is not cruel and abusive treatment within the purview of the G. L. c. 208, § 1, for a man after his marriage to visit his father and mother although the wife objects to such visits where the visits are not made with the intent and purpose of causing suffering to the wife.

"7. Where a man and his wife are living together in the home provided by the husband, the husband has an equal right with the wife to the custody of the baby born of the said marriage and living in the home of the husband and wife.

"8. A wife has no exclusive right to a baby born of the marriage with her husband while she and the baby are living in the home of the husband without an order of court.

"9. When the baby is in the crib in the home provided by the husband and the husband and wife are living together the husband has as much right to take the baby out of the crib as the wife has.

"10. A husband living with his wife in a home provided by the husband has an absolute right to go out certain evenings in the week without the consent of his wife and this does not constitute cruel and abusive treatment."

The record did not state what action, if any, the judge took upon such requests.

The judge found "upon all the evidence . . . that the petitioner is living apart from her husband for justifiable cause."

By order of the judge a decree was entered prohibiting the respondent from imposing any restraint on the personal liberty of the petitioner, and directing him to pay to her toward the support of herself and the minor child the sum of $30 a week until the further order of the court.

The respondent appealed from "the refusal of the court to give" the above rulings, and from the final decree.

The evidence at the hearing was not reported.

*J. F. Gadsby,* for the respondent.

*L. H. Clark,* (*R. E. Keating* with him,) for the petitioner.

WAIT, J.  This is an appeal by a husband from a decree of a probate court adjudging that the wife is justifiably living apart, restraining him from interfering with her per-

sonal liberty and ordering him to pay her each week $30 for her support and that of their minor child.

We discover no error of law. The report of facts found by the judge shows no such conduct of the husband as would require a decree for divorce. It discloses a petulant wife; and a husband unable or unwilling to yield legal rights in order to give her happiness or to relieve nervous strain due, possibly, to unreasonable demands on her part, which, however, affectionate demeanor on his part might overcome. We cannot properly say that the judge was wrong in finding that the husband's conduct, though not illegal, so affects the wife's health that her conduct in leaving him was not wrongful and that she is justifiably living apart from him. Conduct which will not justify divorce may be sufficient ground for a decree for separate maintenance. *Turner* v. *Turner*, 234 Mass. 37. *Lyster* v. *Lyster*, 111 Mass. 327. See *Murray* v. *Murray*, 255 Mass. 19, and *Goldberg* v. *Goldberg*, 237 Mass. 279, 280.

The judge was not bound to make the rulings requested. Remaining with the husband was not necessarily condonation requiring that the wife's petition be dismissed. *Ripley* v. *Ripley*, 259 Mass. 26. The facts reported would sustain findings that any condonation was conditional and that the conditions were not fulfilled. Most of the rulings requested were immaterial. Although a husband may possess the legal rights set out in the requests, the exercise of them, in circumstances such as the judge found to exist, may, nevertheless, justify the wife, where her health suffers as a consequence, in withdrawal, at least for a time, from the home. The report does not show whether they were given or refused. The appellant has not been prejudiced, whatever disposition was made of them.

*Decree affirmed.*