OSCAR E. QUIGLEY *vs.* ANNA B. QUIGLEY.

Nantucket.    October 27, 1941. — December 29, 1941.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Marriage and Divorce,* Cruel and abusive treatment, Condonation. *Probate Court,* Report of material facts, Findings by judge, Appeal.

Upon a voluntary report by a judge of probate of all the material facts, without a report of the evidence, conclusions not based solely on subsidiary findings must stand unless inconsistent therewith; and the propriety of the decree must be determined on the basis of all the findings.

A conclusion of cruel and abusive treatment of a husband by his wife was not unwarranted in law by findings that a course of intentional irritation by her culminated in her unjustifiably and maliciously threatening him with an unloaded rifle, thus putting him in reasonable fear and injuring his health, and was likely to be followed by "further outbursts of bitter temper by" her "implemented by overt acts," "with resulting injury to" him.

Findings by a trial judge that for over two months after acts of cruel and abusive treatment by a wife toward her husband they lived in the same house, sleeping in separate rooms without sexual intercourse, and that he did not intend to condone her conduct, did not preclude a conclusion by the judge, on unreported evidence, that there had been no condonation.

LIBEL, filed in the Probate Court for the county of Nantucket on December 4, 1940.

The case was heard by *Poland,* J.

*G. M. Henry,* for the libellee.

*G. W. Russell,* for the libellant.

QUA, J. In the Probate Court a divorce nisi was granted to the libellant on the ground of cruel and abusive treatment. The questions are whether the libellee was guilty of such treatment and, if she was, whether the libellant condoned her conduct.

The judge made a "Voluntary Finding of Material Facts" which from its form and substance appears to have been intended as a complete statement of the facts that influenced him to his decision. Compare *Birnbaum* v. *Pamoukis,* 301 Mass. 559, 561, 562.

The evidence is not reported. The findings of fact, whether particular or general, must therefore be taken as true in every respect unless the general findings are inconsistent as matter of law with particular findings, and the questions before us on appeal are whether there is such inconsistency, and if not, whether all the findings should in law lead to a decree different from that which has been entered. *Plumer* v. *Houghton & Dutton Co.* 277 Mass. 209, 215. *Hanson* v. *Hanson,* 287 Mass. 154, 155. *Norton* v. *Norton,* 294 Mass. 211.

The parties are of middle age. They have not been happy in their relations with each other for several years. The libellee has been jealous without proved cause and at intervals has purposely irritated and nagged the libellant and once damaged his automobile and threw a book at him. For two years before the filing of the libel the parties had slept in separate rooms in the same house and had had no sexual intercourse. With this as a background the judge made further findings: On September 25, 1940, the libellant returned to Nantucket from a vacation in Maine. The libellee believed that he had taken another woman on this trip, but "the evidence did not disclose that this was true." The libellee waited for him in the unlighted house, expecting that a woman would be with him and "prepared to make some kind of a disturbance if he was so accompanied." No other woman appeared. The libellee, however, voiced her suspicions and in a state of excitement took a twenty-two caliber rifle which the libellant had in his automobile. The judge states that the libellant "testified that she pointed the rifle at him and threatened him with it," and finds that "in this episode" the libellee committed an unjustified assault. The rifle was not loaded, and there was "no evidence that the libellee knew how to use it," but there was suitable ammunition in the house. At any rate the judge finds that the "libellant was put in reasonable fear by the episode"; that the "conduct of the libellee, resulting in the rifle episode, was malicious and injured the libellant's health"; and that "if the parties continue to live together, further outbursts of bitter temper by the li-

bellee, implemented by overt acts, are probable, with resulting injury to the libellant."

The findings just quoted do not appear to be mere inferences or conclusions from the preceding subsidiary findings. They must be deemed to have been based on the evidence as a whole, which is not reported, and in addition the appearance of the parties on the stand may well have influenced the judge to a substantial degree in making them. We cannot say that after a continued course of intentional irritation a malicious and unjustified assault upon a spouse with a rifle, even though in fact unloaded, putting him in reasonable fear and injuring his health, and creating a situation in which it seems probable that there will be further outbursts of bitter temper implemented by overt acts resulting in injury to the libellant, is not sufficient in law to constitute cruel and abusive treatment. *Bailey* v. *Bailey*, 97 Mass. 373, 380, 381. *Curtiss* v. *Curtiss*, 243 Mass. 51. *Steere* v. *Steere*, 265 Mass. 317. *Callan* v. *Callan*, 280 Mass. 37, 41, 42. *Rudnick* v. *Rudnick*, 288 Mass. 256.

The trial judge acknowledges some difficulty in the matter of condonation. After the rifle episode of September 25 the parties continued to live substantially as they had lived for the previous two years, sleeping in the same house in separate rooms and without sexual intercourse, until the libel was filed on December 5, 1940, after which the libellant lived elsewhere, although he continued to eat "some meals" in the house until December 20. He had means to live elsewhere. "In point of conscious motive the libellant did not intend to condone his wife's acts." "So far as it is a question of fact, the court finds that the defence of condonation is not sustained." These findings are apparently based on all the evidence. They leave open only the question whether as matter of law the judge's detailed findings preclude his more general finding of lack of condonation. It cannot be said that they do. "Condonation is a state of mind to be determined upon all the evidence, including rational inferences." *Drew* v. *Drew*, 250 Mass. 41, 45. It is essentially and commonly a question of fact. *Maglathlin* v. *Maglathlin*, 138 Mass. 299, 300. *Ripley* v. *Ripley*, 259 Mass. 26. The

burden of proving it is upon the libellee. *Callan* v. *Callan*, 280 Mass. 37, 42. The evidence is not before us. We are not prepared to rule that the bare facts of sleeping and eating at arm's length in the same house, under the circumstances found, with no other finding of intent to forgive and no distinctly marital relations, are so conclusive of condonation that as matter of law they must prevail against any possible evidence that could have been presented at the hearing tending to show that there was no intent to condone. *Giles* v. *Giles*, 279 Mass. 469. *Smith* v. *Smith*, 154 Mass. 262. *Ripley* v. *Ripley*, 259 Mass. 26. *Coan* v. *Coan*, 264 Mass. 291. *Burke* v. *Burke*, 270 Mass. 449, 454. Compare *Holsworth* v. *Holsworth*, 252 Mass. 133. Hence the finding that there was no condonation must stand.

On both issues the findings support the decree.

*Decree affirmed.*