ARTHUR H. HAYDEN *vs.* ELLEN K. HAYDEN.

Middlesex.    October 6, 1950. — December 15, 1950.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Marriage and Divorce*, Condonation, Connivance, Answer, Waiver, Juris-
diction, Counsel fees. *Waiver. Attorney at Law. Jurisdiction*, Raising
question of jurisdiction.

Failure of the libellee in a divorce case to plead the affirmative defence of
condonation did not prevent the trial court or this court from dealing
with that issue where it was fully tried without objection by the
libellant.

A conclusion that a husband condoned adultery on the part of his wife
was not justified by facts showing the circumstances in which, upon
her refusal to leave his house and their two young children, as requested
by him after discovering the adultery, he and she continued to live
there and take meals at the same table until the close of the hearings
in a divorce proceeding brought by him, but otherwise had virtually
nothing to do with each other and did not live together as husband and
wife in any real sense.

Connivance by a husband at adultery on the part of his wife was not
established by facts showing the circumstances in which she with their
children went to and stayed for some weeks at a summer place, where
the adultery occurred, and he, after being informed of the adultery,
approved their extending their stay there and continued to pay their
expenses without expressing to his wife any criticism of her conduct.

A jurisdictional question as to the authority of the trial court to enter a
certain decree must be considered by this court of its own motion
where not argued by the parties.

After the entry of a decree dismissing the libel in a divorce case, the trial
court had no power to make an award of counsel fees under G. L.
(Ter. Ed.) c. 208, § 38, as appearing in St. 1933, c. 288.

Upon reversing a decree dismissing a libel for divorce and directing a new
decree granting the divorce, this court, although holding that an order

for payment of counsel fees under G. L. (Ter. Ed.) c. 208, § 38, as appearing in St. 1933, c. 288, was beyond the power of the trial court and must be reversed because made after the entry of the decree dismissing the libel, authorized the trial court to include such an order in the new decree.

Upon a record giving this court a fairly complete picture of what was done by counsel for a wife as libellee in a divorce case involving a charge of adultery and issues of condonation and connivance, it was held that an award of a $3,000 fee to be paid by the libellant to counsel for the libellee under G. L. (Ter. Ed.) c. 208, § 38, as appearing in St. 1933, c. 288, should not have exceeded $1,000.

LIBEL for divorce, filed in the Probate Court for the county of Middlesex on September 12, 1949.

The case was heard by *Poland,* J.

*S. MacMillan* (*L. L. Wadsworth, Jr.,* with him,) for the libellant.

*T. J. Hayes,* (*D. J. O'Connell* with him,) for the libellee.

SPALDING, J.    These are appeals from two decrees entered by a Probate Court in connection with a libel for divorce. One dismissed the libel; the other ordered the libellant to pay into court the sum of $3,000 and directed the register to pay this sum to the libellee's attorney.

1. The libel, as amended, alleged adultery on the part of the libellee with a named corespondent.[1] The appeal from the decree dismissing the libel comes here with a report of the evidence and a report of material facts. The facts may be summarized as follows: The parties were married in 1934 and for many years have resided in Bedford. The libellant is "well past middle age" and the libellee is "somewhat younger." Of this marriage there are two daughters, the ages of whom at the time of the hearing below were twelve and fourteen. In July of 1949 the libellee and the children went to Provincetown to spend their vacation. The libellant did not accompany them but the vacation was with his consent and approval and he provided the necessary funds for it, including the rent for a small apart-

[1] The libel also alleged cruel and abusive treatment and the libellee sets up a similar charge in her answer by way of recrimination. These allegations, however, need not concern us since the judge found that they were not sustained and these findings are not here challenged.

ment in which they lived. At this time and for some time prior the relations between the spouses had not been harmonious. The judge found that while at Provincetown the libellee committed adultery with the corespondent. This finding was amply justified by the evidence and is not here challenged. The issues raised by this appeal are (1) whether the libellee's conduct was condoned, and (2) whether there was connivance on the part of the libellant.

The judge found that the libellant had condoned his wife's misconduct. The libellant argues that this conclusion was inconsistent with the subsidiary findings and is not supported by the evidence. The libellant's suggestion that the defence of condonation may not be open, because not pleaded, is without merit. Condonation is an affirmative defence which ordinarily ought to be pleaded, and in the absence of such pleading a party cannot as of right introduce evidence on the issue. *Sanderson* v. *Sanderson*, 271 Mass. 386, 389. *Eldridge* v. *Eldridge*, 278 Mass. 309, 312. *Callan* v. *Callan*, 280 Mass. 37, 42. This principle is unaffected by the omission from the present Divorce Rules of the Probate Courts of the earlier provision that "No affirmative defense shall be heard unless set up by the answer." *Costa* v. *Costa*, 295 Mass. 556. But it does not preclude a court from dealing with the issue in circumstances such as are disclosed here. The libellant did not object to the introduction of evidence on the issue of condonation and the question was gone into fully by both sides. Some of the evidence relating to condonation was brought out by questions put by the judge. Moreover, virtually all of the evidence concerning this issue was undisputed. In these circumstances it is the duty of the court to notice it and deal with it irrespective of the pleading. "Merely procedural rights of parties are not necessarily coextensive with the duty of the court touching the termination of the state of matrimony between libellant and libellee." *Webster* v. *Webster*, 264 Mass. 551, 554. *Newman* v. *Newman*, 211 Mass. 508, 510. *Sanderson* v. *Sanderson*, 271 Mass. 386, 389–390.

The facts with respect to condonation are these. Early in September, shortly after the libellee had returned from Provincetown, the libellant, who had learned of his wife's adulterous relations with the corespondent, signed the libel and it was served on the libellee on September 12, 1949. At that time the libellant told the libellee to leave the house and offered her some money with which to live elsewhere; he forbade her to take the children with her. The libellee refused to leave and since that time both parties have continued to live in the same house up to and including December 1, 1949, the last day of the hearing in the court below. The house is owned by the libellant, and his place of business, which consists of a laboratory where a proprietary medicine is manufactured, is located near by on land forming a part of the estate.

Other facts we state in the language of the judge. "The parties had no sexual intercourse after February, 1949, but in view of their ages and their obvious distaste for each other their abstention from such relations is not of decisive importance. They ate at the same table and occupied adjoining but not directly connected bedrooms.[1] In all respects except sex relations they live as they have lived for many years. The libellant has not tried to end the libellee's occupation of the house except by asking her to leave.[2] Her alternative to remaining in the home was and is to abandon personal care of the children to a maid of all work who was a witness at the trial and the court finds that the children ought not to be left wholly to the maid's care. The libellee takes good care of the children who are bright and well brought up and devoted to her. It would not be for their benefit now to be forcibly separated from her, notwithstanding her past misconduct. She was justified in refusing to leave them on the night of September 12 and since then was justified morally, if not legally, in staying to

---

[1] It appears from the evidence that during this period the children, who had previously slept in another part of the house, have slept in a room adjoining that of the libellee.

[2] The libellee conceded in her testimony that she was asked many times to leave.

take care of them in the only place available to her. The libellant has ample means to live elsewhere and it was reasonable and easy for him to have left the house at any time after September 12."

Concerning the libellant's intent the judge found as follows: "There was no direct or express evidence upon the libellant's motive or intention in respect of condonation. The libellant had no conscious motive or intention about condonation one way or the other, because he had no knowledge of the concept of condonation as affecting his libel. This conclusion is implied from his attitude in court and the course of the trial. The libellant believed that the mere fact that he owned the house and told her to leave warranted his staying there. He was being advised at all times by competent counsel and did not try to qualify the appearance of living with the libellee as his wife."

We are of opinion that the judge erred in concluding that the libellant had condoned the libellee's misconduct. "Condonation is a state of mind to be determined upon all the evidence, including rational inferences." *Drew* v. *Drew,* 250 Mass. 41, 45. Since there was no direct evidence bearing on the libellant's intention and since the judge found that the libellant had "no conscious motive or intention about condonation one way or the other," his state of mind must be deduced from his acts and conduct in the circumstances. The facts found by the judge together with those disclosed in the evidence show, we think, that the libellant did not forgive his wife. It is apparent that after the libel was served on the libellee the parties did not continue to live together as husband and wife in any real sense. Their relations after that date were at best a truce pending the determination of their rights by the court. In short, beyond the fact that the parties were living together under the same roof and were eating meals at the same table they had virtually nothing to do with each other. It is to be noted that the house was owned by the libellant and that his place of business was located in a building on the premises. He also had the duty of driving his children to

and from their school in Concord, or at least he seems to have been the only person available to perform that duty. In the circumstances he was not obliged to leave or run the risk that his remaining would be treated as condonation. See *Smith* v. *Smith*, 154 Mass. 262; *Ripley* v. *Ripley*, 259 Mass. 26; *Coan* v. *Coan*, 264 Mass. 291; *Burke* v. *Burke*, 270 Mass. 449, 454; *Giles* v. *Giles*, 279 Mass. 469; *Quigley* v. *Quigley*, 310 Mass. 415. Compare *Holsworth* v. *Holsworth*, 252 Mass. 133. We have read the numerous cases dealing with condonation cited by the libellee and find nothing in them inconsistent with the conclusion here reached.

Since, as we hold, a finding of condonation was not justified, it becomes necessary to determine whether the defence of connivance was established.[1] The findings of the judge relating to this issue were as follows: "The libellee committed adultery with the corespondent in the summer of 1949 at Provincetown. Her association with the corespondent earlier in the year caused the libellant to have justifiable suspicions of adultery as early as May, 1949. The libellee and her two children lived in an apartment in Provincetown from early July, 1949, until about September 1, 1949, and the corespondent lived in the same apartment more or less of that time and the adultery took place there. The libellant paid the rent of the apartment. On July 29, 1949, the libellant sent a detective to Provincetown to watch the libellee. He reported to the libellant facts that showed that the libellee and the corespondent were living in Provincetown with adulterous relations and the libellant received the report before he wrote the letter to the libellee dated August 3, 1949, which is in evidence as exhibit 4. In this letter the libellant wrote, 'When you left I told you that I thought five weeks would be enough for the Provincetown cottage. I am willing to extend this to six weeks or to

---

[1] In discussing this aspect of the case the judge used the word "collusion" but he undoubtedly meant connivance. Connivance was pleaded by the libellee and both parties have argued the case as presenting this issue rather than collusion and we shall deal with it on that basis. There was no evidence whatsoever tending to show collusion between the parties.

August 22, when you will return home.' On August 12, 1949, he wrote the letter exhibit 5 to her at Provincetown. This letter relates to July bills of the family at Provincetown and expresses no criticism of her conduct there. The libellant continued to pay the expenses of his wife and children at Provincetown until September 1, 1949, and made no complaint to her of her acts there before said date. Whether or not the facts stated constitute collusion [*sic*] seems to be a question of law."

We are of opinion that the defence of connivance was not established. The governing principles have been discussed in many decisions of this court. See *Morrison* v. *Morrison*, 136 Mass. 310; *Robbins* v. *Robbins*, 140 Mass. 528; *Wilson* v. *Wilson*, 154 Mass. 194; *Noyes* v. *Noyes*, 194 Mass. 20; *Leavitt* v. *Leavitt*, 229 Mass. 196; *Vinton* v. *Vinton*, 264 Mass. 71. In essence, as was concisely stated in the case last cited, the rule is that "connivance, to constitute a defence in divorce, involves action which facilitates the commission of the act of adultery, something which smooths 'the path to the adulterous bed'" (page 73). The fact that the libellant paid the rent for the cottage in Provincetown for his wife and children, without more, did not constitute connivance. There was no evidence that the idea of spending the summer there was suggested by him. And while he was suspicious of his wife's relations with the corespondent he had no reasonable ground for supposing that the corespondent would cohabit with her there. At least, this inference is just as permissible as a contrary inference. Consequently, on July 29, when he sent the detective to Provincetown, he had done nothing that can fairly be said to have facilitated his wife's adultery. Suspecting his wife, he could properly have her watched in order to obtain proof of adultery and was not bound to throw obstacles in her way. *Wilson* v. *Wilson*, 154 Mass. 194, 195.

The judge found that the adultery was committed in the summer of 1949 in Provincetown. He does not specify any particular time. Indeed, on the evidence he could not have

done otherwise. His finding of adultery undoubtedly was based on the libellee's cohabitation with the corespondent, and on the undisputed evidence that existed, except for brief intervals, from July 20 to September 1. There is nothing to show that the libellant knew of this cohabitation until it was reported by the detective around the first of August. It is reasonable to infer that adultery had been committed prior to the time of the detective's report. It cannot therefore be said that, when the libellant agreed in his letter of August 3 to extend the libellee's stay until August 22, he was creating an opportunity for adultery that had not theretofore existed. In other words, this is not a case of smoothing "the path to the adulterous bed," for when the letter was written that path had already been trodden. The burden was on the libellee to prove connivance, an affirmative defence, and on this record that burden has not been sustained.

2. Shortly after the libel was brought the libellee filed a motion asking for an allowance to enable her to defend the libel. No action appears to have been taken on this motion prior to or during the hearing. On February 24, 1950, nearly three months after the entry of the decree dismissing the libel, the judge, presumably under G. L. (Ter. Ed.) c. 208, § 38, as appearing in St. 1933, c. 288,[1] entered an order that the libellant "on or before March 24, 1950, pay into the court the sum of three thousand dollars as an allowance to said libellee. Said sum may be paid by the register to the libellee's attorney." In view of the similarity in the wording of § 38 in its present form to G. L. (Ter. Ed.) c. 215, § 45, the court now undoubtedly has power to award costs and expenses, which may include counsel fees, and may order them to be paid to counsel for the opposing party. See *Whitney* v. *Whitney*, 325 Mass. 28, 33; *Silke* v. *Silke,*

---

[1] That section reads: "In any proceeding under this chapter, whether original or subsidiary, the court may, in its discretion, award costs and expenses, or either, to either party, whether or not the marital relation has terminated. In any case wherein costs and expenses, or either, may be awarded hereunder to a party, they may be awarded to his or her counsel, or may be apportioned between them."

325 Mass. 487, 493. Compare *Wallace* v. *Wallace*, 273
Mass. 62, construing § 38 before it was revised by St. 1933,
c. 288. The libellant does not contend that the court lacked
authority to award counsel fees but argues that the allow-
ance was excessive. The parties have not argued the point
that the order relating to costs was entered after the final
decree dismissing the libel, but since the question is juris-
dictional it is our duty to consider it of our own motion.
*Kisley* v. *Kisley*, 322 Mass. 676, 677, and cases cited.

In *Untersee* v. *Untersee*, 299 Mass. 417, 424, it was held
that under G. L. (Ter. Ed.) c. 215, § 45, "Costs and ex-
penses can be allowed only as an incident of some pending
proceeding, and the court has no power to allow them as to
any proceeding after the final decree therein." To the same
effect are *Mulloney* v. *Barnes*, 266 Mass. 50, 53–54, and
*Potter* v. *Mullaney*, 301 Mass. 497, 500. That principle is
not confined to costs and expenses arising under § 45 but is
one of general application. *Lucas* v. *Morse*, 139 Mass. 59.
*Densten* v. *Densten*, 280 Mass. 48, 50. It is likewise con-
trolling where costs are awarded, as here, under G. L. (Ter.
Ed.) c. 208, § 38, as appearing in St. 1933, c. 288. The
Probate Court, therefore, had no power to enter the decree
awarding counsel fees after the entry of the decree dismiss-
ing the libel; it was not incidental to any proceeding,
"original or subsidiary." See said § 38. But, as will pres-
ently appear, the latter decree must be reversed and a new
decree is to be entered granting a divorce on the ground of
adultery. There will also be questions of custody and sup-
port to be determined. The libellee should have an oppor-
tunity to have her costs and expenses determined as an
incident to the new decree. See *Untersee* v. *Untersee*, 299
Mass. 417, 424.

Since the matter of counsel fees will arise upon the entry
of a new decree and the point has been argued by counsel,
we deem it appropriate to discuss whether the amount
awarded below was excessive. In connection with the order
awarding counsel fees to the libellee the judge made no find-
ings of fact. Whether any evidence was introduced at the

hearing does not appear. Ordinarily we would not be in a position to pass on the correctness of an award in such circumstances. See *Boynton* v. *Tarbell,* 272 Mass. 142, 146; *Milne* v. *Walsh,* 285 Mass. 151, 153. The present case, however, stands somewhat differently. The case which gave rise to the award of counsel fees is here on a record from which we can get a fairly complete picture of what was done by counsel for the libellee. See *Dillon's Case,* 324 Mass. 102, 113. We know that the hearing lasted for three days. We also know what issues of fact and law were involved and that they were neither unusual nor especially difficult. Some time, of course, was required in preparing the case for trial. Giving consideration to all the factors involved, we are of opinion that the award here ought not to have exceeded $1,000.

Where payments are to be made out of the property of litigants to or for the benefit of counsel who may not have been employed by those whose estates are thus diminished, the standard is not the same as that applied in an action by an attorney against a client with whom he has voluntary contractual relations. *Frost* v. *Belmont,* 6 Allen, 152, 164–165. *Boynton* v. *Tarbell,* 272 Mass. 142, 145. *Lewis* v. *National Shawmut Bank,* 303 Mass. 187. As was said in the case last cited, "A test commonly employed is the compensation paid to public officers for services of a similar character" (page 191). Fees in such cases are awarded on "strictly conservative principles." *Commissioner of Banks, petitioner, in re Prudential Trust Co.* 240 Mass. 478, 485. That principle has been applied where counsel fees have been awarded by the court under G. L. (Ter. Ed.) c. 215, § 45, and under its general equity powers, and we think it should be applicable to a case like the present where the payment of counsel fees is a forced one and is made to one with whom the libellant did not voluntarily contract. The power to award counsel fees in cases of this sort is one of great delicacy and is to be applied with caution. As we said in *Lewis* v. *National Shawmut Bank,* 303 Mass. 187, 191, "It is difficult to conceive of anything more likely to

undermine public respect for the administration of justice than a wide spread suspicion that the courts are aligned in aiding the distribution among counsel of excessive proportions of the funds of those who are unfortunate enough to become involved in controversy."

The decree dismissing the libel is reversed, and a decree is to be entered granting a divorce on the ground of adultery. The new decree may also include such provisions relating to custody and support as the court may in its discretion deem proper, and it may also include an award of costs and expenses to the libellee consistent with this opinion. The decree awarding counsel fees to the libellee's counsel is reversed. Costs and expenses of these appeals may be allowed to the appellee or her counsel in the discretion of the Probate Court. *Silke* v. *Silke*, 325 Mass. 487, 493.

*So ordered.*