PETER C. DOYLE *vs.* MARY A. DOYLE.

Suffolk. November 7, 1951. — December 3, 1951.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & COUNIHAN, JJ.

*Marriage and Divorce,* Cruel and abusive treatment, Condonation.

A decree of divorce granted to a husband on the ground of cruel and abusive treatment was justified by findings of marital discord between the parties and temporary separations over a period of several years, culminating in the wife's throwing a picture at the husband and their final separation, of her not wanting him as a husband but only wanting the use of his name, of a hostile attitude on her part toward him, and of "serious impairment" of his health through her acts.

A finding that a husband condoned cruel and abusive treatment by his wife was not required as a matter of law by evidence that after they had separated he provided her and their child with a residence which he purchased in his and her names as tenants by the entirety, that he made visits to such residence for the purpose of making payments to her and seeing the child, that they called on friends together, and that she did typing for him.

LIBEL for divorce, filed in the Probate Court for the county of Suffolk on June 10, 1949.

The case was heard by *Dillon, J.*

*J. B. O'Hare, (D. J. Ryan* with him,) for the libellee.

*B. Ginsburg, (S. J. Ginsburg & W. E. Ginsburg* with him,) for the libellant.

SPALDING, J. On this libel for divorce alleging cruel and abusive treatment a decree nisi was entered. The libellee

appeals. There is a report of material facts by the judge, and the evidence is reported.

We summarize the findings of the judge as follows: Following their marriage on August 30, 1941, the parties lived in the home of the libellee's mother in Brighton. In September, 1942, they separated following an argument that took place at a meal, during which the libellee jabbed at the libellant with a table knife. This separation was not of long duration. Between February and November, 1943, the libellant served in the armed forces of the United States. In March, 1944, the parties again separated for about a month. "During the years 1943 and 1944 there was bickering between the parties which at times resulted in the libellee assaulting the libellant." In 1945 the parties again separated for a period of three to five weeks. On April 17, 1946, the libellee threw a picture at the libellant. The picture, which was a likeness of the libellant, was in a metal frame with a glass covering. "On this occasion the libellee ordered the libellant from the premises. This resulted in a final separation between the parties . . . [and they] have not lived together as man and wife from the said April 17, 1946." The libellee did not want the libellant as a husband but wanted only the use of his name. By reason of her attitude of hostility toward the libellant he was forced to sleep alone in the attic. The judge found "that the actions of the libellee stated above resulted in a serious impairment to the health of the libellant." A son, the only child of the marriage, was born on June 1, 1945.[1]

The foregoing findings are supported by the evidence and are sufficient, we think, to justify the decree of divorce. *Curtiss* v. *Curtiss,* 243 Mass. 51. *Rudnick* v. *Rudnick,* 288 Mass. 256. *Mooney* v. *Mooney,* 317 Mass. 433. *Reddington* v. *Reddington,* 317 Mass. 760. *Flavell* v. *Flavell,* 324 Mass. 362. The findings here go beyond those in *Vergnani* v. *Vergnani,* 321 Mass. 703, and *Hamilton* v. *Hamilton,* 325 Mass. 278, on which the libellee relies.

[1] The libellee was awarded custody of the child and the libellant was ordered to pay $15 a week to the libellee for the child's support.

The libellee, who pleaded condonation, argues that the evidence required a finding that this defence had been established. We do not agree. The evidence on this issue may be summarized as follows: In May, 1948, the libellant purchased a house in the name of himself and the libellee as tenants by the entirety, and the libellee has lived in that house ever since. The libellant testified that he bought this house "for my son basically." On various occasions after the separation the libellant visited at this house. The libellant testified that these visits were on Sunday morning and were for the purpose of seeing his son and making payments to the libellee for her support. On a few occasions he and the libellee went out together to call on friends. From time to time the libellee did some typing for the libellant in connection with his work as a lawyer.

It has been said that "Condonation is a state of mind to be determined upon all the evidence, including rational inferences." *Drew* v. *Drew*, 250 Mass. 41, 45. *Hayden* v. *Hayden*, 326 Mass. 587, 591. Plainly on the foregoing evidence a finding of condonation was not required as matter of law. The judge's findings on this issue are brief but it is apparent that he was satisfied that this defence had not been established. We cannot say that his conclusion was plainly wrong. *Quigley* v. *Quigley*, 310 Mass. 415. *Hayden* v. *Hayden*, 326 Mass. 587, 591–592.

The decree is affirmed.

*So ordered.*