ALBERT TAYLOR, administrator, *vs.* ARTHUR J. HEWETT.

Essex.   November 15, 1927. — January 5, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Abortion. Evidence,* Presumptions and burden of proof.

A consideration of all the evidence introduced at the trial of an action of tort by the executor of the will of a woman, who had been superintendent of a hospital, against a physician who was a member of the staff at

the hospital for causing the death and conscious suffering of the plaintiff's intestate, alleged to have resulted from "a criminal abortion" performed on her by the defendant, was *held* to show nothing to prove that the defendant performed the operation or was a party to it.

TORT for causing conscious suffering and the death of the plaintiff's intestate. Writ dated January 22, 1924.

In the Superior Court, the action was tried before *Sisk,* J. Material evidence is stated in the opinion. The judge ordered a verdict for the defendant. The plaintiff alleged exceptions.

*C. I. Pettingell,* for the plaintiff, submitted a brief.

*James J. Ronan,* for the defendant.

CARROLL, J. This is an action of tort to recover damages for the death and conscious suffering of the plaintiff's intestate, alleged to have resulted from "a criminal abortion" performed on her by the defendant. In the Superior Court a verdict for the defendant was directed, and the plaintiff excepted.

The plaintiff's intestate, Edith Hazel Taylor, was the superintendent of a hospital in Newburyport. The defendant was a physician and a member of the staff of this hospital. There was evidence from Miss Taylor's sister, Mrs. Titcomb, that the defendant "came quite frequently to" her house "with . . . Miss Taylor"; that he took Miss Taylor to ride "about twice a week"; that he gave her a fountain pen and pencil as a birthday gift; that Miss Taylor said to the witness that she accompanied the defendant to a football game at Boston and "had lunch after the game," and "that she and the defendant expected to announce their engagement at Christmas time." Mrs. Titcomb further testified that on Sunday, November 4, she learned that her sister was sick, at the hospital; that she told the witness her trouble was "gall bladder trouble, due to gall-stones"; that on the Wednesday following, she came to Mrs. Titcomb's home to "get rested up"; that she "was feeling pretty well that day"; that on Thursday, November 8, the defendant called at the Titcomb home in the afternoon, and again in the evening and took Miss Taylor to ride; that she returned between eleven and twelve o'clock; that the next morning Mrs. Tit-

comb went to her sister's room and noticing the smell of ether asked her the cause of it, and was told "she was down on Ship Street the night before and the defendant took out a splinter from a boy's finger and she had given the boy a little ether"; that on Friday Miss Taylor, after some discussion about calling a doctor, suggested that the defendant be called; that he was notified about thirty minutes after eleven and he came and stayed till two o'clock in the morning; that "hot turpentine stupes were applied and she was given morphine"; that at four o'clock in the morning she had a recurrence of pain and the defendant "made a very short visit, giving her morphine and came again at half-past seven that morning"; that "most of the time Miss Taylor was alone with the defendant"; that the defendant "came back with Dr. Benson about eleven o'clock"; that Miss Taylor told her sister "to lock one of the bedroom doors and to have the witness stay downstairs when the doctors came"; that Dr. Benson said Miss Taylor was suffering from gall stones, and the defendant said he was going "to take her to Haverhill and have her under observation for a week or perhaps more"; that she was taken to a hospital in Haverhill, and she "asked her sister to come to the hospital to see her, and the defendant said 'No,' that Miss Taylor needed the rest"; that on Sunday the defendant telephoned Mrs. Titcomb that her sister was comfortable and "repeated substantially the same message on Monday and Tuesday"; that Miss Taylor died on Wednesday. This witness further testified that, on the evening of her sister's death, the defendant saw Mrs. Titcomb; that "he was very nervous . . . and said that he always liked Miss Taylor; that she was a good girl"; and that her death was caused by the bursting of the gall bladder.

There was additional evidence that the defendant was frequently in the company of Miss Taylor. A witness testified that on one occasion in the fall of 1923, about midnight, he met the defendant "with a lady on the Plum Island turnpike near Plum Bush Bridge"; that the defendant asked for a ride and he drove them to Market Square. The defendant testified that on the night when this happened he had driven

Miss Taylor to Plum Island Beach to see the surf, which was running high; that when the batteries of his car gave out he left it by the side of the road and he and Miss Taylor were walking in town when he met the witness and was given a ride.

The medical examiner testified that he performed an autopsy on Miss Taylor and discovered a perforation on the posterior wall of the womb; that he thought she was pregnant; that he met the defendant at Dr. Benson's office with Captain Hussey, and Dr. Benson stated the following facts: that Miss Taylor had informed him that she was having her monthly period; that upon examination he found some blood and tenderness over the womb and over the gall bladder; that he "considered three possible causes for her condition, abortion, renewal of gall bladder trouble for which he had treated her before, or the skipping of a period"; that he advised her removal to the hospital in Haverhill, and on examination found pain in the region of the gall bladder and the upper part of the abdomen; that on Tuesday he operated on her and he then found a perforation in the uterus.

The defendant testified that Miss Taylor was of good moral character and he found she was good company; "that there never was any serious thought between them in reference to matrimony; that she never indicated she had any fondness for him; that there was no sexual or intellectual attraction between them." There was further evidence which we do not think it necessary to review in detail.

. We have examined all the reported evidence, and we find nothing to prove that the defendant performed the operation or was a party to it. The burden was upon the plaintiff to prove that the defendant performed the abortion. Even if there were contradictions in the statements and testimony of the defendant, they did not in connection with all the evidence sustain the burden of proof. There was no evidence of improper relations between the defendant and Miss Taylor, that he was in any way responsible for her condition. Even if her statement to her sister concerning the announcement of her engagement to the defendant is given the fullest

credence, it does not show that the defendant had illicit relations with her, and there is no evidence of an adulterous disposition, immodest conduct or indecent familiarity. On all the evidence a jury would not be justified in finding that the defendant performed the illegal operation or in fact knew of it; nor that he was guilty of any improper conduct with Miss Taylor.

As the evidence was insufficient to sustain the charge, we have not thought it necessary to consider the question of the effect of the deceased's participation in a criminal abortion. See *Szadiwicz* v. *Cantor*, 257 Mass. 518.

*Exceptions overruled.*