HUBERT W. BROOKS & others *vs.* THE NATIONAL SHAWMUT
BANK OF BOSTON.

Suffolk.    September 14, 1948. — February 8, 1949.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Equity Pleading and Practice,* Report of evidence, Appeal. *Equity Juris-
diction,* Bill of review. *Words,* "New matter."

An appellant from a final decree in a suit in equity in the Superior Court,
who, solely because of the death of a stenographer appointed under
G. L. (Ter. Ed.) c. 214, § 24, was unable to present to this court a
transcript of the testimony in support of a contention that findings of
fact by the trial judge were plainly wrong, should be entitled to retry
his case.

In a suit in equity, where the final decree was proper on the pleadings and
findings of material facts so that it must be affirmed on appeal, but it
appeared that the appellant, solely because of the death of a stenog-
rapher appointed under G. L. (Ter. Ed.) c. 214, § 24, was unable to
present to this court a transcript of the testimony to support a con-
tention that the findings made by the trial judge were plainly wrong,
the remedy of the appellant to obtain a retrial of the case was by a
petition to the trial court for a bill of review; the situation caused by
the stenographer's death was "new matter" arising after the entry of
the decree.

BILL IN EQUITY, filed in the Superior Court with a writ
of summons and attachment dated October 9, 1939.

The case was heard by *Goldberg,* J.

In this court the case was submitted on briefs.

*J. C. Reilly & J. P. Rooney,* for the defendant.

*S. C. Rand & G. d'A. Belin, Jr.,* for the interveners.

SPALDING, J.    The plaintiff Brooks, who owned first
mortgage bonds of the Preble Corporation (hereinafter
called the corporation), brought this suit against The
National Shawmut Bank of Boston (hereinafter called
the defendant) individually and as trustee under a mortgage
indenture dated June 30, 1923, which it had entered into
with the corporation.    The bill was brought on behalf of
the plaintiff and all other bondholders similarly situated.
The members of a bondholders' committee acting under a

deposit agreement were permitted to intervene as plaintiffs and will be referred to as such hereafter in this opinion. The bill charged that the defendant negligently performed its duty as trustee by failing to comply with the terms of the indenture in regard to the issuance of bonds and the investment of sinking fund assets, and prayed for an accounting and damages. The defendant in its answer to the motion to intervene sought relief against the plaintiffs by way of counterclaim. The counterclaim alleged in substance that the plaintiffs had deliberately delayed proceeding against the defendant for an accounting and damages until the defendant had completely divested itself of the trust property and no longer had a lien thereon to secure its right of reimbursement under the indenture for liability or costs which it had incurred, including costs between solicitor and client. The defendant prayed that the plaintiffs be enjoined from prosecuting any cause of action until the defendant was repossessed of the trust property; it also prayed "for its costs, including costs between solicitor and client."

The case was referred to a master who found that the defendant was not guilty of any wilful default. He found, however, that in certain instances bonds were certified and issued upon documents which were not in compliance with the terms of the trust; that in one instance there was an improper investment of sinking fund assets in an amount slightly in excess of $34,000;[1] and that in these instances the officers and employees of the defendant did not act with reasonable diligence. With respect to the improper certification of bonds by the defendant, the master found that the plaintiffs suffered no damage. He found that the allegations contained in the counterclaim (with the excep-

---

[1] The master found that the securities constituting this investment were purchased by the defendant in good faith under a misunderstanding of their status, and that the officer who acted for the defendant in making these purchases was negligent. He found that the sale of the securities resulted in a loss of principal in the amount of $680. The master found in effect that the interest obtained from the securities so invested was in excess of that which could have been obtained if the funds had been properly invested. In view of the exculpatory clause contained in the trust indenture he reported the question of liability to the court.

tion of those relating to costs and expenses which he did not hear) were not sustained. The report of the master was confirmed by an interlocutory decree. Thereafter a judge of the Superior Court heard the parties on the issue whether the defendant was entitled to costs and expenses as prayed for in the counterclaim. A final decree was entered dismissing the bill and the counterclaim. The defendant appealed.

The questions presented by this appeal arise out of the dismissal of the counterclaim. The only question now argued is whether the judge rightly dismissed the counterclaim on the issue heard before him, namely, that relating to costs and expenses. Pursuant to a request by the defendant the judge reported the material facts found by him. He found that it was reasonable and necessary for the defendant to defend the suit brought against it and to retain counsel, to employ experts and to "expend certain sums of money" in the preparation and trial of the case. He found that the sum actually expended by the defendant for the preparation and trial of the bill and counterclaim down to the time of hearing on the counterclaim was $60,060.20, and that it had agreed to pay an additional sum of $10,000 for legal services "for carrying the case through to a final decree in the Superior Court, which may involve an effort on . . . [the defendant's] part to obtain reimbursement from the plaintiff for . . . [its] counsel fees and expenses." The conclusion of the judge was as follows: "Of the total amount of money which the defendant has expended and has agreed to expend, I am unable to determine, on the present state of the evidence, how much of the money was reasonably and necessarily expended in the defence of the plaintiff's bill of complaint."

The defendant makes no contention that these findings would not support the decree dismissing its counterclaim. See *Turner* v. *Morson*, 316 Mass. 678, 681. Its position is that a report of the evidence would disclose that the findings were plainly wrong. The evidence, however, is not before us for reasons which will presently appear.

When the counterclaim was heard in the Superior Court

a stenographer was designated by the judge to report the testimony to this court pursuant to G. L. (Ter. Ed.) c. 214, § 24. See Rule 76 of the Superior Court (1932). The final decree was entered on April 2, 1947, and the defendants' appeal was seasonably claimed. The judge filed his findings of material facts on May 8, 1947, as of May 2, 1947. On November 19, 1947, the defendant filed a paper entitled "suggestion of death" which recited that the stenographer who had been designated by the judge to report the evidence "became ill on March 6, 1947, and died on May 25, 1947; and for that reason the appellant is unable to procure a transcript of the testimony." [1] Recognizing that the findings of the trial judge cannot be revised on appeal without a report of all the evidence (see *Romanausky* v. *Skutulas*, 258 Mass. 190, 194), the defendant asks that the decree dismissing the counterclaim be reversed and that the case be remanded to the Superior Court with instructions to determine how much the defendant was entitled to recover for costs and expenses. The only ground urged in support of reversal is that, due to the death of the stenographer, it cannot bring the evidence here.

We lay to one side the underlying question (argued at length by the parties) whether the defendant is entitled to reimbursement for costs and expenses. To attempt to decide that question on this record would not be fair to the parties. The judge apparently took the view that the defendant was entitled to recover costs and expenses but did not sustain the burden of establishing what expenses were attributable to the preparation and trial of the bill as distinct from the counterclaim. Lacking the evidence which was before the trial judge, we are in no position to decide the question of liability, and express no opinion on it.

That brings us to the question whether, in view of the defendant's inability to have the case reviewed in this court on all the evidence through no fault of its own, it ought to have an opportunity to retry the issue of costs and expenses. We are of opinion that it should.

---

[1] The plaintiffs concede in their brief that the stenographer died before transcribing her notes, and that the notes cannot be read.

The defendant could appeal to this court, as of right, under G. L. (Ter. Ed.) c. 214, § 19. And if it saw fit it could bring the case here on all the evidence under G. L. (Ter. Ed.) c. 214, § 24. Such an appeal is much broader than one which comes here only on a report of material facts. Appeals of the latter class must be decided solely upon the issue whether the facts reported, with any reasonable inferences we can draw from them, support the decree. *Turner* v. *Morson,* 316 Mass. 678, 680–681. *Vergnani* v. *Vergnani,* 321 Mass. 703. But when a case comes here on all the evidence "all questions of law, fact and discretion are open for our decision. From the evidence we can find facts not expressly found by the judge. If convinced that he was plainly wrong, we can find facts contrary to his findings." *Lowell Bar Association* v. *Loeb,* 315 Mass. 176, 178. This is a substantial right. To deprive the defendant of it because of an event for which it was in no wise responsible would be manifestly unjust. That a hardship is imposed on the plaintiffs in requiring them to undergo the burden and expense of a second trial after a decree in their favor cannot be gainsaid. But that hardship is less than that which the defendant would suffer if it were to be deprived of its full day in court.

Authority as well as reason supports this conclusion. The rule is well settled both in this country and in England that where a party, without fault on his part, loses the benefit of his exceptions through the death, illness or resignation of a judge a new trial will be granted. *Borrowscale* v. *Bosworth,* 98 Mass. 34, 37. *Wamesit Power Co.* v. *Lowell & Andover Railroad,* 130 Mass. 455, 457. *Hume* v. *Bowie,* 148 U. S. 245, 253. *People* v. *Judge of Superior Court of Detroit,* 41 Mich. 726. *State* v. *Weiskittle,* 61 Md. 48. *Nind* v. *Arthur,* 7 Dow. & L. 252. See note in 13 A. L. R. 102, 115–118. In *Borrowscale* v. *Bosworth,* cited above, a bill of exceptions which was virtually agreed to was submitted to a judge of the Superior Court for his approval. The judge held the bill for more than a year and declined to answer any letters sent by the parties concerning it. Thereafter he resigned his office without having allowed the bill.

Subsequently another judge of the same court granted a new trial. In upholding this action this court said, at page 36, "Where it appears to the court that a party has been deprived, without his fault, of a right or remedy which the law gives him, it would generally be held a legal reason for granting a new trial." Further on in the opinion it was said, "We can have no doubt that where a party has regularly taken exceptions in a cause, and has lost the benefit of them without fault of his own, a new trial may be granted. He has a right by law to the judgment of the higher court upon the decision by which he feels himself to be aggrieved; and a new trial may be his only remedy" (page 37).

Essentially the problem involved in the foregoing cases is the same as that in the case at bar. But a case that even more closely resembles the case before us is *Mulrey* v. *Carberry*, 204 Mass. 378. In that case an appealing party discovered, after the hearings in an equity case had concluded, that the stenographer who had taken the evidence at later hearings was not the same person who had been appointed commissioner and who had taken the first portion of the evidence. The discovery of this fact occurred at a time when it was too late to bring the evidence to this court by any authorized method. An application for leave to file a bill of review was denied. On an appeal to this court it was held that permission to bring a bill of review should have been granted. The court, to be sure, took into consideration the fact that the appealing party had a meritorious case, but of equal, if not of greater, importance was the fact that the evidence necessary for an appeal had, through no fault or neglect of the parties or their attorneys, become unavailable.

The precise question here has arisen a number of times in other jurisdictions and it has generally been held that where a party, without fault or neglect, is unable to have his case reviewed on appeal because of the unavailability of the stenographic record he will be granted an opportunity to retry the case. *Shafer* v. *King*, 82 Colo. 258, 260 (stenographer incapacitated and unable to prepare transcript).

*Richardson* v. *State*, 15 Wyo. 465 (inability to obtain transcript because of loss of stenographer's notes). *Nichols* v. *Harris*, 32 La. Ann. 646 (notes of stenographer stolen). *State* v. *McCarver*, 113 Mo. 602 (transcript lost or stolen and notes of stenographer destroyed). *Gibbs* v. *State*, 23 Okla. Crim. 247 (stenographer absconded after trial, thereby preventing appealing party from obtaining transcript). *Reynolds* v. *Romano*, 96 Vt. 222 (refusal of stenographer, who had left the jurisdiction, to furnish transcript). *Indianapolis Life Ins. Co.* v. *Lundquist*, 222 Ind. 359 (stenographer's notes and exhibits lost). *Curran* v. *Wilcox*, 10 Neb. 449 (failure of stenographer to furnish adequate transcript within time limited by law). *Navarro* v. *State*, 147 S. W. (2d) 1081 (stenographer failed to take testimony). See annotations in 13 A. L. R. 102, 111–115, and 107 A. L. R. 603, 605–607. The *Stenographer Cases*, 100 Maine, 271, relied on by the plaintiffs, were decided on the narrow ground that, due to statutory limitations on its jurisdiction, the court lacked the power to grant a new trial. The rule in *Etchells* v. *Wainwright*, 76 Conn. 534, cited by the plaintiffs, was considered so harsh that it was changed by statute. See *Dudley* v. *Hull*, 105 Conn. 710, 718–719.

It remains to consider how, conformably with our practice, the defendant may obtain the remedy to which we think it is entitled. The authority of this court to review equity cases is found in G. L. (Ter. Ed.) c. 214, § 19. Section 19 allows an appeal to this court by a "party aggrieved by a final decree." The burden is upon the appealing party to show by the record that there was error of law or fact in the decree appealed from. *Coe* v. *Coe*, 313 Mass. 232, 234, and cases cited. But on this record no error of law or fact appears. In these circumstances it is our duty to affirm the decree. The defendant's remedy must be found in the court below. If this were an action at law that court would have the power to grant a new trial at any time before judgment, and a motion for a new trial would be the appropriate procedure. See *Borrowscale* v. *Bosworth*, 98 Mass. 34, 38–39; *McKinley* v. *Warren*, 218 Mass. 310, 311–312; *Bartley* v. *Phillips*, 317 Mass. 35, 39. But the case is on

the equity side of the court, and it is an established principle that after the entry of a final decree in equity the case is finally disposed of by the court, subject to such rights of appeal as the law affords, and that the court has no further power to deal with the case except upon a bill of review. *White* v. *Gove*, 183 Mass. 333, 340. *Holyoke National Bank* v. *Dulitzky*, 273 Mass. 125, 127. *Kingsley* v. *Fall River*, 280 Mass. 395, 398. In the case last cited certain exceptions to this rule are set forth but they need not be stated because they are not applicable here. See also *Hyde Park Savings Bank* v. *Davankoskas*, 298 Mass. 421, 423–424.

In *Boston & Maine Railroad* v. *Greenfield*, 253 Mass. 391, the court per Rugg, C.J., said at page 397, "A bill of review is the appropriate proceeding by which to seek reversal of a final decree in equity. . . . A bill of review commonly is granted only (1) for error, of law apparent on the record, (2) new evidence not susceptible of use at the trial and coming to light after the decree, and (3) new matter arising after the entry of the decree." To the same effect are *Clapp* v. *Thaxter*, 7 Gray, 384, 386, *Mackay* v. *Brock*, 245 Mass. 131, 133–134, *Manning* v. *Woodlawn Cemetery Corp.* 249 Mass. 281, and *Boston* v. *Santosuosso*, 308 Mass. 189, 193–194. The present case falls within the third classification just mentioned. We are of opinion that the death of the stenographer whereby the defendant is unable to obtain a transcript of the testimony is new matter of the sort on which a bill of review can be grounded. The new matter need not be of an evidentiary nature. See note in 59 Harv. L. Rev. 957; Daniell's Chancery Pl. & Pr. (6th Am. ed.) 1577. In *Sawyer* v. *Davis*, 136 Mass. 239, the new matter which was held sufficient to authorize the bringing of a bill of review was a change in the law subsequent to the entry of the final decree. In *Boston & Maine Railroad* v. *Greenfield*, 253 Mass. 391, where the petitioner brought a bill of review to revise a decree entered against it in proceedings for the abolition of a grade crossing, the new matter consisted of changes in the financial resources, amount of business and prospects of future traffic of the petitioner, and in the nature and methods of competition

among carriers.   The court also took into consideration that there had been a substantial increase in costs of construction since the original decree was entered.   See also *Mulrey* v. *Carberry*, 204 Mass. 378, discussed elsewhere in this opinion.   These decisions make it plain that the words "new matter" as used in connection with bills of review are not of narrow import.

It is settled that a bill of review based on errors of law apparent on the record cannot be maintained to review a final decree after rescript.   *Nashua & Lowell Railroad* v. *Boston & Lowell Railroad,* 169 Mass. 157, 162–164. *Manning* v. *Woodlawn Cemetery Corp.* 249 Mass. 281, 285.   *Boston* v. *Santosuosso,* 308 Mass. 189, 194–196. But the rule is otherwise where the bill of review is based on newly discovered evidence or new matter.   In such cases there may be a review of a decree entered after rescript.   *Mulrey* v. *Carberry,* 204 Mass. 378.   *Boston* v. *Santosuosso,* 308 Mass. 189, 196–198.   A bill of review grounded on new matter can be filed only by leave of court (*Elliott* v. *Balcom,* 11 Gray, 286, 300; *Manning* v. *Woodlawn Cemetery Corp.* 249 Mass. 281, 286), and the application for such leave must be made in the court which entered the decree of which review is sought.   *Boston* v. *Santosuosso,* 308 Mass. 189, 198–202.   See *Nelson* v. *Bailey,* 303 Mass. 522, 525.   Whether leave shall be granted is a matter within the discretion of that court, but the exercise of that discretion, in a proceeding in equity, may be revised on appeal by this court.   *Mulrey* v. *Carberry,* 204 Mass. 378, 381. *Manning* v. *Woodlawn Cemetery Corp.* 249 Mass. 281, 284. In the event that leave is requested by the defendant it can hardly be presumed, in view of what has been said in this opinion, that it will be denied.

*Interlocutory decree affirmed.*
*Final decree affirmed.*