WILLIAM J. SILKE *vs.* MARY C. SILKE
(and a companion case[1]).

Essex. January 5, February 27, 1950. — March 9, 1950.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Marriage and Divorce*, Adultery. *Bastardy. Evidence*, Of adultery, Of illegitimacy. *Probate Court*, Report of evidence.

A report by a probate judge at the request of the libellant, not assented to by the libellee, of "the testimony of witnesses" at the hearing of a libel for divorce, where no commissioner had been appointed and such report apparently was a summary of the evidence from longhand notes by the judge and did not purport to set forth all that the witnesses had said, was not a report of the evidence under G. L. (Ter. Ed.) c. 215, § 12; c. 214, § 24, as amended by St. 1947, c. 365, § 1, and Rule 17 of the Probate Courts (1934), and was not considered by this court although it had been printed and filed with the record on an appeal by the libellant from a decree dismissing the libel.

Facts reported by a judge of probate who heard a libel by a husband for a divorce on the ground of adultery by the libellee did not require a conclusion that the libellant had overcome the presumption that a

---

[1] The companion case is by Mary C. Silke against William J. Silke.

child, born to the libellee seven months and one day after cohabitation with the libellant was resumed following a period of nonaccess of about seven months, was the child of the libellant; and, since the sole basis of the charge of adultery was that the child was not the child of the libellant, the libel properly was dismissed.

LIBEL for divorce, filed in the Probate Court for the county of Essex on December 30, 1948; also, a

PETITION for separate support, filed in the same court on February 14, 1949.

The cases were heard by Phelan, J.

J. W. Jennings, for William J. Silke.

S. J. Cagan, for Mary C. Silke.

RONAN, J.   These are two appeals, one by the libellant from a decree of the Probate Court dismissing a libel charging his wife with adultery, and a second from a decree granting his wife's petition for separate support, awarding her the custody of two minor children, and ordering him to pay her a weekly allowance.

The cases were heard together.   The judge made a report and also two subsequent reports of the material facts. The judge stated that, although there had been no commissioner appointed, in compliance with the request of the libellant he "reports the testimony of witnesses as follows." There follows in narrative form testimony of the various witnesses.   This material was seemingly supplied by the longhand notes of the judge.   It does not purport to set forth all that each and every one of the witnesses said.   Its form indicates that it is little more than a summary of the evidence.   A report of the evidence on appeals from the Probate Courts under G. L. (Ter. Ed.) c. 215, § 12, is governed by G. L. (Ter. Ed.) c. 214, § 24, as amended by St. 1947, c. 365, § 1, which provides for a report of the evidence on appeals in equity from a decree of a single justice of this court and also from decrees in the Superior Court. This amendment changed the existing law only in two respects: first, it is not now necessary, as it formerly was, to request that the evidence be reported before any evidence is offered and a party may now make such a request after

the evidence is concluded, and, secondly, this court is now expressly authorized to make rules regulating the diminution or abbreviation of the evidence. The amendment left unaffected the provision in the statute empowering the courts to provide by general rules for some appropriate method for having the evidence reported by the judge by whom the case is heard or by a person selected by him for the purpose. With an exception not now material, the statute still reads that "no oral evidence shall be exhibited to the full court, but the cause shall be heard on appeal upon *the same evidence* as on the original hearing" (emphasis supplied). The matter so far as it relates to the Probate Courts is further regulated by Rule 17 of the Probate Courts (1934), which provides that where a report of the evidence has been requested, or has been directed by the court, "a certified transcript thereof as taken by the stenographer shall be filed in the register's office by the appellant," subject to the right of the judge to direct corrections to be made in it before it is prepared for use in this court.

Where an appellant seeks to attack the findings of fact made by the trial judge on the ground that they are not supported by the evidence and that they are plainly wrong, he must furnish a full report of the evidence by which the challenged findings may be tested. We know of no other way for obtaining a review of facts which depend upon oral testimony. *Romanausky* v. *Skutulas*, 258 Mass. 190, 193. *Thayer* v. *Thayer*, 277 Mass. 256, 258. *Skerrett* v. *Hartnett*, 322 Mass. 452, 454. See *Brooks* v. *National Shawmut Bank*, 323 Mass. 677. Suits in equity have sometimes been heard upon a summarized statement of all the material evidence relative to the only questions intended to be presented for decision, but this has only occurred where the parties with the approval of the judge have agreed upon such statement. *Cook* v. *Howe*, 280 Mass. 325, 327. *Gordon* v. *Guernsey*, 316 Mass. 106, 108. The present cases do not come within this practice because no summary of the evidence was agreed to by the appellee. In fact, she has moved to strike out this summary of the evidence prepared by the trial

judge. A transcript of the evidence not made in accordance
with the rules and statute is not properly a part of the
record and cannot be considered, even if it is printed in the
papers before us. *Mulrey* v. *Carberry*, 204 Mass. 378, 382.
*Abeloff* v. *Peacard*, 272 Mass. 56, 59. *Bowles* v. *Comstock*,
286 Mass. 159, 162. *Gearin* v. *Walsh*, 299 Mass. 145, 146.

The cases therefore must be decided as coming here only
on the reports of the material facts. The findings contained
therein must be accepted as true unless they are inconsistent
with the other facts found. If not inconsistent, the ques-
tion is whether they are sufficient to support the decrees or
whether they require decrees different from those that were
entered. *Quigley* v. *Quigley*, 310 Mass. 415, 416. *Turner* v.
*Morson*, 316 Mass. 678, 681. *Briggs* v. *Briggs*, 319 Mass.
149, 150. *Brooks* v. *National Shawmut Bank*, 323 Mass.
677, 681.

The only definite date alleged in the libel is that the
libellee committed adultery on or about May 17, 1946, at
Tuam, Ireland. She had left this country in December,
1945, accompanied by her eight year old daughter, and she
stayed with her own mother and also with the libellant's
mother until she left Ireland on July 12, 1946, and arrived
home on July 20, 1946. Her last menstrual period occurred
on June 27, 1946. She was in Ireland at the time alleged in
the libel, but her conduct while in Ireland, as disclosed by
the findings made by the judge, negatives any support for
this charge. Her reputation for chastity was not questioned.
*Commonwealth* v. *Morrissey*, 175 Mass. 264. Not a single
act appeared that cast any suspicion of infidelity on her
part. *White* v. *Ely*, 234 Mass. 221, 223. *Taylor* v. *Hewett*,
262 Mass. 109, 112, 113. *McCracken* v. *Cohen*, 322 Mass.
12, 13.

The charge of adultery is based entirely upon the propo-
sition that as the libellee did not return to America until
July 20, 1946, the libellant could not be the father of a
child that was born on February 21, 1947. The findings,
however, show that the libellee experienced no cessation of
monthly periods at any time prior to her return to America

and she immediately resumed marital relations with the libellant. She consulted à physician in the late summer of 1946 who advised her that she would be confined on April 3, 1947. She suffered such a severe hemorrhage on January 10, 1947, that she remained at a hospital until January 20, 1947. There are no findings as to the weight, size, or any other physical characteristic of the child, or any other objective feature indicating whether the birth followed the normal period of gestation or a shorter period. Neither are there any findings as to the effect, if any, the hemorrhage had in accelerating the birth of the child. While the findings indicate that medical testimony was heard by the judge, he made no findings of any facts that might have been established by such testimony, especially with reference to whether the birth was premature or otherwise. It is incredible that, where the only issue was whether there was or was not the normal period of gestation, the medical testimony was not addressed directly to this point. We do not even know whether the child bore any resemblance to the libellant. The bald question presented is whether the judge was required as matter of law to find that the libellant was not the father of a child born seven months after he had access to his wife.

In order to prove the alleged offence solely through the date of the birth of the child, the burden was upon the libellant to overcome the presumption that a child born in wedlock was his child by showing that he had no access to the libellee during the period when, according to the course of nature, he could be the father of the child. *Negus* v. *Foote*, 228 Mass. 375. *Taylor* v. *Whittier*, 240 Mass. 514. *Sayles* v. *Sayles*, 323 Mass. 66. We are not faced with the question that is frequently presented in this class of cases as to the time relative to the birth of the child that a husband had access to his wife, for it is undisputed in the instant case that there was no access until her return to this country on July 20, 1946, when according to the finding of the judge they resumed marital relations.

Courts take judicial notice that the normal period of

gestation is two hundred eighty days, but they also recognize that the period is subject to some variations. The extent of variation "is not a matter of common knowledge, if, indeed, it is a matter of exact scientific knowledge." *Commonwealth* v. *Kitchen*, 299 Mass. 7, 10. *McDaniel* v. *State*, 24 Ala. App. 314. *Spears* v. *Veasley*, 239 Iowa, 1185. *Harward* v. *Harward*, 173 Md. 339. It was held in the *Kitchen* case that a period of gestation amounting to three hundred five days was unusual and improbable, and that the presumption that the husband was the father of the child was overcome when it was shown that he had no access to his wife during this period of three hundred five days and the mother during the normal period prior to the birth was having intercourse frequently with a man other than her husband. It was, however, intimated that, in the absence of evidence of this illicit conduct of the wife, the mere fact that the period of gestation exceeded the usual time might not be sufficient to rebut the presumption. In *Phillips* v. *Allen*, 2 Allen, 453, a child born eight months after marriage was held to be legitimate. It was said that there is medical authority to the effect "that children are sometimes born in seven months from conception, and live and grow to manhood" (page 455). That a child may have been begotten seven months before his birth has been sometimes recognized in the decisions. We cannot say that the judge was wrong in finding that the child was begotten after the libellee returned from Ireland. There are numerous decisions in other jurisdictions in which it has been held, in accordance with medical testimony adduced at the trials, that the limits of the period of gestation extend from a minimum of about two hundred thirty days to a maximum of three hundred twenty days, and in some instances are calculated from the last menstrual period to the date of the birth. *Gaskill* v. *Gaskill*, [1921] P. 425. *Dazey* v. *Dazey*, 50 Cal. App. (2d) 15. *Eldridge* v. *Eldridge*, 153 Fla. 873. *Craven* v. *Selway*, 216 Iowa, 505. *Moore* v. *Moore*, 301 Ky. 14. *People* v. *Case*, 171 Mich. 282. *State* v. *Domish*, 154 Minn. 512. *Taylor* v. *Taylor*, 123 App. Div. (N. Y.) 220. *State* v.

*Banik,* 21 N. D. 417.  *Pierson* v. *Pierson,* 124 Wash. 319.
*State* v. *Van Patten,* 236 Wis. 186.

The judge in finding that the libellee did not commit
adultery must have impliedly found that the child was be-
gotten on or about July 20, 1946.  As far as we know, there
may have been evidence explaining this unusually short
period of gestation.  If the libellant desired specific findings
of the various details which the judge found and which were
involved in arriving at his conclusion that the period of
gestation was less than usual, his remedy was to request a
report of additional subsidiary findings dealing with this
particular matter and, if denied, to have saved his rights.
*Vergnani* v. *Vergnani,* 321 Mass. 699, 701, 702.  He was
evidently satisfied with the filing of a supplemental report
as he did not request a further report.  He cannot now
complain of the failure of the judge to make more detailed
findings which led to the general finding that the libellee did
not commit adultery, *Colby* v. *Callahan,* 311 Mass. 727, 728;
nor can he now attack the reports of material facts on the
ground that they ought to contain other and additional
facts.  *Sullivan* v. *Sullivan,* 320 Mass. 114.  We cannot say
in this state of the record and without the benefit of a tran-
script of the evidence that the judge was plainly wrong in
finding that the presumption of legitimacy had not been
rebutted.

The reported findings support the wife's petition for sepa-
rate support and establish that her husband had deserted
her.

The motion of the libellee to strike out the summary of
the evidence furnished by the judge is allowed.  The decree
entered on the divorce libel is affirmed, and so is the decree
entered upon the petition for separate support.  Costs and
expenses of this appeal may be allowed to the appellee or
her counsel in the discretion of the Probate Court.  *Whitney*
v. *Whitney, ante,* 28.

*So ordered.*